UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>vs.<br><br>ISAAC MYLES | No. 10 CR 647<br><br>Judge John W. Darrah |

**<u>GOVERNMENT'S POSITION PAPER AS TO SENTENCING FACTORS</u>**

The UNITED STATES OF AMERICA, by its attorney, ZACHARY T. FARDON, United States Attorney for the Northern District of Illinois, submits the following position paper as to sentencing factors. For the reasons set forth below, the government respectfully requests that this Court sentence defendant, ISAAC MYLES, to a term of imprisonment at the high end of the Guidelines range of 210 to 262 months of imprisonment, a sentence well-supported by the factors to be considered under Title 18, United States Code, Section 3553(a).

**I.  OFFENSE CONDUCT**

On two separate occasions, December 4, 2007, and December 16, 2009, defendant was a felon in possession of a firearm. In addition, on December 16, 2009, defendant was in possession of approximately 17.7 grams of heroin with intent to distribute. Defendant's conduct is discussed in detail in the Government's Version of the Offense, and is summarized below.

On December 4, 2007, defendant was in possession of a fully loaded .45 caliber Charles Daly semi-automatic handgun, after having been convicted of a felony five separate times before that date. As detailed in the Government's Version

of the Offense, when defendant was caught with this firearm, he was combative and uncooperative with the police before and during his arrest.

Two years later, while released on bond while his criminal case involving the above-referenced gun possession charge was still pending in the Circuit Court of Cook County, defendant was again caught with a gun, this time a fully loaded .22 caliber RG Industry revolver that he stored under the mattress in his bedroom. Police also discovered defendant preparing and packaging at least approximately 17.7 grams of heroin for distribution at his kitchen table in the home he shared with his mother, at the time a Cook County Deputy Sheriff.

## II.  THE GUIDELINES CALCULATIONS

### The Guidelines Enhancements

The government agrees with the calculations as set forth in the Presentence Investigation Report ("PSR"). With respect to Counts One, Two, and Four, the base offense level is 24, pursuant to Guideline § 2K2.1(a)(2). PSR at 7. Pursuant to Guideline § 4B1.1(b), because defendant is a career offender and the statutory maximum penalty on Count Two is 30 years of imprisonment, the offense level is 34. PSR at 8.

### Acceptance

Pursuant to § 3E1.1(a), because defendant admitted to the conduct underlying the counts of conviction, the offense level is reduced by two levels. PSR at 9. Because defendant went to trial on Counts One through Three, and did not plead guilty to Count Four until the morning of trial, the government will not move for the additional point under Guideline § 3E1.1(b). More specifically, according to

Guideline § 3E1.1(b), defendant is eligible for the third point "upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently." U.S.S.G. § 3E1.1(b). Here, while defendant pled to Count Four the morning of trial and admitted his conduct with respect to Counts One and Two during the trial, the government had to fully prepare for trial on all four counts and present evidence and engage in a full trial on three counts. PSR at 9. In other words, defendant did not permit the government to avoid preparing for trial and did not permit the government and the court to allocate their resources efficiently. For these reasons, defendant is not eligible for, and thus the government will not move for, the third point under Guideline § 3E1.1(b).

Accordingly, with the two-level reduction for acceptance, the total offense level is 32. PSR at 9.

The Guidelines Range

Defendant has 12 criminal history points, thus his criminal history category is V. PSR at 12. However, because defendant is a Career Offender, his criminal history category is increased to VI. PSR at 12. An offense level of 32, when combined with the criminal history category of VI, results in an anticipated advisory Sentencing Guidelines range of 210 to 262 months of imprisonment. PSR at 20.

### III. THE SECTION 3553(A) FACTORS SUPPORT A SENTENCE AT THE HIGH END OF THE GUIDELINES RANGE

A sentence at the high end of the Guidelines range is warranted under the Section 3553(a) factors. Further, such a sentence is sufficient, but not greater than necessary, to comply with the Section 3553(a) factors.

#### A. Nature and Circumstances of the Offense.

Defendant is a Career Offender due to the extent of his criminal history. Despite this felonious history, on two separate occasions, he was a felon in possession of fully loaded firearms. When he was caught with the gun in 2007, his response was to be combative and uncooperative and to fight with the police. When he was caught with the gun the second time, he was also caught preparing and packaging heroin for distribution. The nature and circumstances of this offense warrant a high-end Guidelines range sentence.

#### B. History and Characteristics of the Defendant.

Defendant is 43 years old and, as detailed below, is a recidivist, which is a factor this Court should strongly consider under § 3553(a) when sentencing him. PSR at 3, 10-12. His disregard for the law is evidenced by the facts that (1) the conduct for the majority of his convictions occurred while he was on probation or parole, and (2) he is a Career Offender under the Guidelines. PSR at 8. Indeed, he has three violent offenses in his criminal history, each involving his use of a weapon to threaten and/or harm a victim in order to steal. PSR at 10-12; Supplemental Report to the PSR; and Government's Supplemental Version of the Offense.

4

Further, as detailed below, from the time he was first convicted of robbery in 1988 through these offenses, his string of criminal activity has continued essentially unabated, except for when he was incarcerated.

In May 1988, at the age of 19, defendant sustained his first conviction for using a knife to steal cash and car keys from a victim. *Id*. He was charged with armed robbery, but pled to the lesser included count of robbery, and was sentenced to 180 days of prison and 4 years of probation. *Id*. Four years later, in April 1992, defendant violated his probation when he was caught selling a controlled substance suspected to be heroin. *Id*. On December 4, 1992, he was convicted of possession of a controlled substance and sentenced to 1 year of probation. *Id*. In October 1993, he again violated his probation when he was again caught with heroin. *Id*. On October 18, 1994, he was convicted and sentenced to 30 months of probation. *Id*. Defendant violated his probation again, this time only two days later, on October 20, 1994, when he was arrested for robbing victims of their money and jewelry by threatening the victims that he would "pop them" while pointing something wrapped in a towel at them, intending to suggest he had a firearm. *Id*. On May 20, 1994, he was convicted of aggravated robbery and sentenced to 5 years in prison, along with an additional 3 years he received for his violation of the probation on the heroin possession conviction. *Id*.

Less than two years later, on March 9, 1997, defendant violated his parole by distributing cocaine and possessing a distribution quantity of heroin. *Id*. On June 11, 1997, he was convicted of unlawful delivery of a controlled substance and

5

sentenced to 7 years in prison. *Id*. He apparently learned his lesson on violating probation or parole because he waited until October 16, 2002, six months after his parole on the narcotics distribution conviction was discharged, to use a Smith & Wesson .357 revolver to shoot a victim in the foot while stealing drugs from him. *Id*. On March 19, 2003, defendant was convicted of aggravated battery with a firearm and sentenced to 6 years in prison. *Id*. He was discharged from his parole in March 2007. *Id*. Less than a year later, on December 4, 2007, defendant was caught with a fully loaded .45 caliber semi-automatic gun, the subject of his instant conviction on Count Four. PSR at 5. While on pre-trial release for these gun charges, on December 16, 2009, he was caught preparing and packaging heroin for distribution while storing a fully loaded gun under his mattress, the subjects of his instant convictions on Counts One and Two. *Id*.

Defendant's criminal history involves violence; possession and use of deadly weapons, including knives and guns; possession and distribution of narcotics; and a complete disregard for probation, parole, and pre-trial release orders prohibiting him from continuing his criminal conduct. Defendant does not have the personal or family history typically associated with a criminal history of this magnitude. Indeed, according to defendant, he was raised in a supportive home, and "enjoyed an excellent childhood," while being raised by his law enforcement officer mother. PSR at 16. Despite being raised in a supportive environment, with close relationships with his mother and siblings, defendant sustained six serious felony convictions involving drugs, guns, and/or violence. PSR at 10-12, 16. In other words,

6

defendant chose to engage in his violent and criminal path in life. For these reasons, defendant's history and characteristics warrant a sentence at the high end of the Guidelines range.

### C. Seriousness of the Offense and the Need to Promote Respect for the Law, Provide Just Punishment, and To Afford Adequate Deterrence.

The possession of firearms and illegal narcotics are very serious offenses that threaten the safety of the public. The harm that befalls our community, including innocent bystanders who get caught in the cross-fire, due to the explosive mix of drugs and guns cannot be overstated. First, despite being a felon (five times over) and thus being prohibited from ever touching a firearm again, defendant was caught with firearms on two separate occasions, both while under court order to refrain from criminal activity. Second, the narcotics distributer is an integral player in an organization that requires a lot of people to effectively execute its purpose, to traffic illegal drugs. The drug trafficking organization thrives on the misery of drug addiction that plagues the United States. If defendant was able to distribute the heroin he was caught preparing and packaging, it would have had a significant impact on the lives of many, including the addicts that purchased the narcotics, the family, friends and employers of those drug abusers, and the community left with the aftermath of addiction and violence that accompanies drug trafficking and abuse. Defendant's sentence should reflect the seriousness of this offense.

Further, defendant's sentence should be severe enough to adequately deter him from engaging in firearms possession and drug trafficking again, and to

7

sufficiently deter others from engaging in this dangerous and illegal conduct. Accordingly, a sentence within the Guidelines range will provide just punishment for defendant's offense, promote respect for the law, and afford adequate deterrence.

## IV. CONCLUSION

For all of the foregoing reasons, the government respectfully requests this Court sentence defendant to a term of imprisonment at the high end of the Guidelines range of 210 to 262 months of imprisonment. Such a sentence would reflect the seriousness of the offense, promote respect for the law, and provide a just punishment for the offense as set forth in Section 3553(a)(2)(A).

Dated: January 27, 2014 Respectfully submitted,

ZACHARY T. FARDON
United States Attorney

By: */s/ Shoba Pillay*
SHOBA PILLAY
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 886-7631