UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. No. 10 CR 647 |
| vs. | ) | |
| | ) | Judge John W. Darrah |
| | ) | |
| ISAAC MYLES | ) | |

**SENTENCING MEMORANDUM**

COMES NOW Defendant, ISAAC MYLES ("Mr. Myles"), by and through his attorneys, Beau B. Brindley and Joshua J. Jones, and asks this Honorable Court to exercise its discretion to impose a sentence below the recommended guideline range. In support, Mr. Myles states the following:

## I.      INTRODUCTION

Mr. Myles was originally charged with four counts in a superseding indictment. He was charged with two counts of being a felon in possession of a firearm, one count of possession with intent to distribute heroin, and one count of possession of a firearm in furtherance of a drug trafficking offense. Mr. Myles entered a guilty plea to one count of being a felon in possession of a firearm. Both before and during trial Mr. Myles, through counsel and by sworn testimony, admitted that he was guilty of the second felon in possession count and the possession with intent to distribute count. Mr. Myles only contested the lone count of possession of a firearm in furtherance of a drug trafficking offense. Mr. Myles was acquitted of that count and convicted of the two counts to which he admitted.

## II.      DISTRICT COURTS HAVE BROAD DISCRETION TO DEVIATE FROM THE GUIDELINES FOR THE PURPOSE OF IMPOSING A FAIR AND JUST SENTENCE.

When determining the appropriate sentence for an individual defendant, a sentencing

court should impose the shortest possible sentence that (A) reflects "the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" (B) deters future criminal conduct; (C) protects the public from the defendant and (D) provides the defendant with the "needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C.A. § 3553. When determining whether a given sentence is sufficient to effectuate these purposes district courts are directed to consider:

1. "the nature and circumstances of the offense and the history and characteristics of the defendant;" 18 U.S.C. § 3553(a).

2. "the kinds of sentences available;" 18 U.S.C. § 3553(a).

2. the defendant's Guideline range;

4. Any relevant policy statements;

5. "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" 18 U.S.C. § 3553(a);

6. "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

A defendant's guideline range is advisory. *United States v. Booker,* 543 U.S. 220, 244 (2005). Under *Booker* and its progeny sentencing courts may not treat the applicable guideline range as presumptively reasonable. *Nelson v. United States,* 129 S.Ct. 890, 891 (2009). Instead, the advisory guideline range must be weighed against the other factors listed in 18 U.S.C. § 3553(a). *Kimbrough v. United States,* 552 U.S. 85, 92 (2007). In the pursuit of a just sentence, district courts may devise policies and impose sentences that are at odds with the policies articulated by the Federal Sentencing Guidelines. *Spears v. United States,* 129 S.Ct. 840 (2009). Regardless of what the applicable guideline range suggests, § 3553 directs the district court to impose a sentence no longer than necessary to accomplish the purposes of punishment in 18

U.S.C.A. § 3553(a)(2).

## II.    Guidelines Calculations

Base Offense Level: 34

Acceptance of Responsibility: -2 (32)

Criminal History Category VI

Guideline Range: 210 – 262 months

## III.    The Career Offender Guideline Is Inappropriate In This Case

Mr. Myles is forced to concede that a technical application of the Sentencing Guidelines in this case results in a career offender designation. However, this Court should mitigate the harsh result recommended by the guidelines because the career offender guideline was designed to target drug kingpins and not drug addict offenders like.

The Career Offender guideline produces "some of the most severe penalties under the guidelines." *See* USSC, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing* at 133-34 (2004), available at http://www.ussc.gov/15_year/15year.htm. Yet, despite being the harshest component of the guidelines it is not supported by historical experience or empirical evidence like most of the rest of the guidelines. Unlike in the guidelines development process for the majority of the guidelines, the Sentencing Commission did not use empirical data of average sentences, pre-guidelines, as the starting point for the Career Offender guideline. *See* 28 U.S.C. § 994(m); S. Rep. No. 98-225, at 116 (1983) (noting that under the sentencing guidelines "the average time served should be similar to that served today in like cases").

This case demonstrates perfectly the unnecessary severity of the guideline. According to the PSIR, Mr. Myles's guideline range without the enhancement would be 84-105 months. That

is based on an offense level of 22 and criminal history category of V. The career offender guideline more than doubles that range, adding more than a decade to the recommended sentence. Despite this fact, the career offender guideline is not the result of the careful empirical study that produced the rest of the guidelines. Like the now abandoned crack guidelines, the career offender guideline was not based on a review of sentences that were handed down before the guidelines,; instead it is the result of a congressional directive to the commission to set guideline ranges at or near the statutory maximum for certain repeat offenders.

Given the extraordinary increase in penalty and the general lack of support for the career offender guideline, it is hard to see why such a drastic increase in the penalty is appropriate. Put another way, if the career offender guideline is unduly harsh in even many run-of-the-mill cases, it is surely inappropriate here where Mr. Myles's criminal history reflects a life ravaged by heroin addiction and the real offense guideline for the offense of conviction would be so significantly lower than that called for by the career offender designation. It is true that Mr. Myles has previous convictions for crimes of violence. However, those crimes were all precipitated by addiction—by the need and attempt to obtain heroin. While some increase is appropriate due to this history, an additional decade of incarceration is unwarranted. For these reasons, the Court should sentence Mr. Myles under § 3553(a) to a sentence above that reflected by a regular guideline calculation, but significantly below the extremely harsh sentence recommended by the career offender guideline.

IV.     MR. MYLES ACCEPTED RESPONSIBILITY FOR HIS OFFENSE

In this case, Mr. Myles accepted responsibility for every offense of which he was convicted. He did not enter a plea to two of the counts only because the government would not consent to a conditional plea allowing him to appeal certain pretrial rulings. The government has

chosen, as is within its discretion, not to move for the third point for acceptance of responsibility. The government contends that it still had to prepare for trial on the counts of conviction. However, Mr. Myles made clear before trial that he was not contesting those counts and would only contest the §924(c) offense. He admitted from opening statement that he was guilty of those crimes. This Court cannot grant Mr. Myles the additional point off the guidelines. However, the Court can take into account the fact that, at all times, he only ever denied the offense of which he was acquitted, under 3553(a). This Court should slightly mitigate the sentence it might otherwise give because of the unique circumstances of Mr. Myles's admissions and the fact that he informed the government and the Court, pretrial, of his desire and intent to admit and accept responsibility for all charges except the charge for which he was acquitted.

## V.     MR. MYLES'S PERSONAL HISTORY AND CHARACTERISTICS

The background and history that led Mr. Myles to committing these offenses is tragic for its familiarity. Mr. Myles was born and raised on the West side of Chicago. Mr. Myles's father passed away when Mr. Myles was only seven years old. Despite his father's early passing, Mr. Myles had a positive childhood up through elementary school. He maintained strong relationships with his mother and family. He performed and behaved well in school.

It was when Mr. Myles got into high school that things started to go South. Mr. Myles was an exceptional basketball player in high school. He received a scholarship to attend Weber High School, a Catholic high school in the city. He played and was very successful during his first two years of high school. After two years, Mr. Myles wanted to transfer to Collins High School, an even better school for playing basketball. However, because of his scholarship, when he transferred he was prohibited from playing basketball unless Weber agreed to sign a release. Weber High School refused to sign the release and Mr. Myles was prohibited from playing

basketball. At that time, basketball was the center of Mr. Myles's life. Without it, he began to lose interest in school, and ultimately he dropped out entirely.

It was right around this time that Mr. Myles was first exposed to drugs. He began smoking marijuana around the age of 16. When he was eighteen he tried heroin. He was hooked immediately. Throughout his early 20s Mr. Myles used heroin on a daily basis. From that point on, the only times that Mr. Myles was able to remain clean was when he was incarcerated. His addiction affected every aspect of his life. His relationship with his family members suffered. With the assistance of his family, Mr. Myles attempted to get help through a treatment program at Braden House. However, Mr. Myles was unable to break free from his addiction and returned to heroin use after a few months of treatment.

Mr. Myles's criminal history reflects his serious addictions by way of numerous arrests and convictions for drug possession in small, user quantities. It is clear that Mr. Myles did sell drugs at times. However, it is also clear, as he explained during his trial testimony, that he sold drugs in order to have money to buy drugs. Mr. Myles is not a significant drug trafficker. He is a defendant like many that this Court sees who is both a seller and a user, both a perpetrator of drug crimes and a victim of drug crimes.

Since he has been incarcerated for the instant offense, Mr. Myles has put his time to as good of use as possible. As the attached documents reflect, Mr. Myles has taken numerous classes in an attempt to obtain his GED. As the test scores reflect, he has managed to obtain a passing score in every subject except mathematics. And he continues to take classes and study to achieve the goal that he has set from himself of getting his GED. Mr. Myles has also participated in significant drug treatment while he has been incarcerated. He has completed the nonresidential drug treatment program Breaking the Cycle. He has also completed courses in anger

management, parenting, and philosophy of nonviolence. These are opportunities that Mr. Myles has never previously had or taken advantage of when he has been previously incarcerated. Mr. Myles is also at an age where the Court would expect to see some significant changes in his behavior. Mr. Myles is nearly 45 years old. He is doing everything within his power while incarcerated to demonstrate to his family and to the Court that he is serious about making changes in his life.

Despite the many troubles that Mr. Myles has had in his life, with significant help from his mother, Mr. Myles has managed to play a meaningful role in the life of his son, Jovaris. Jovaris is on the verge of graduating from college. Mr. Myles has been in regular communication with his son both before and after his incarceration. His relationship with his son provides additional motivation to Mr. Myles to better himself and his life, while demonstrating that he has already taken steps to do so independently.

**VII.    BALANCING THE 3553 FACTORS.**

Section 3553 calls upon courts to recognize relevant differences among defendants, even defendants with the same base offense level or guideline range. In arriving at a final sentence, the Court should impose a sentence no longer than necessary to (A) reflect "the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" (B) deter future criminal conduct; (C) protect the public from the defendant and (D) provide the defendant with the "needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553.

**a.    Deterrence**

Deterrence is a legitimate concern for the Court in this case, as it is in every case where the defendant has a significant drug dependency problem. However, the sentence recommended

by Mr. Myles in this case will easily be the longest stretch of custody time that Mr. Myles has ever served. Additionally, Mr. Myles still has the support of his family—both his mother and sister. A sentence of ten years or a little more is a very harsh sentence, but it also is not a sentence that destroys a life. When he gets out, even though he will be in his 50s, Mr. Myles will still be able to play a meaningful role in his son's life. He will be able to spend time with his mother in her old age. In short, a sentence of around ten years is sufficient to deter Mr. Myles. The government has no evidence it can supply to indicate that a sentence of 262 months is necessary to deter Mr. Myles while a sentence of 120 months is not. This is especially the case because Mr. Myles has never been subjected to any sentence even remotely close to 120 months in the past. Thus, there is no evidence that a sentence between 120 and 144 months would be insufficient to deter him. A sentence between 120 and 144 months is also sufficiently lenient to deter him after he gets out by giving him a life to come back to.

In terms of general deterrence, any person susceptible who learns that you will get 10 years in prison for a relatively small amount of heroin, despite significant addiction and being acquitted of a serious firearms charge is going to be deterred. A sentence greater than 120 months is not necessary to further general deterrence.

    **b.**    **Incapacitation**

Ten years is a sufficient time to incapacitate Mr. Myles. Whatever sentence the Court selects, Mr. Myles will eventually be released. A sentence around ten years forces an extended period of sobriety on Mr. Myles, keeps him off the streets for many years, but also allows him the opportunity to change and reintegrate into society, which would be a better safeguard against any potential future crimes than simply warehousing him for a few additional years. There is no reason to believe a sentence greater than 120 months is necessary to further the goal of

incapacitation. There is no evidence that the government can identify to say that a sentence of 262 months is sufficient to further incapacitation while a sentence of 120 months is not.

### c. Rehabilitation

Mr. Myles has already begun the road to rehabilitation. He has demonstrated this through his work in the classes and programs at the MCC that he is ready to take this opportunity to turn his life around seriously. He has taken steps to gain important skills and is just a few points shy of being able to obtain his GED. Too lengthy of a prison term will only serve to derail the progress he has already made.

### d. Seriousness of the Offense

In most sentencing hearings everyone concedes that drug dealing is a serious offense. And the effects of drugs on communities like those that Mr. Myles grew up in are very serious and very real. But the act of being a low-level drug dealer is not an incredibly serious crime in the grand scheme of things. It is a crime that is easy to justify to yourself. The harms inflicted by drugs are not apparent during the drug sale—they can only be seen in the big picture. This is especially true for someone like Mr. Myles who uses drug dealing as a means to the end of satisfying his own drug habit. When you are buying small amounts of drugs, selling cmall amounts ot be able to further the habit does not seem, through drug-addled eyes, like a serious crime. It is important that the sentence reflect the serious effect that drugs have on certain communities. But it is equally important that the sentence reflect the fact that Mr. Myles himself is a victim of the drug trade. His lifelong struggle with drug addiction is the thing that brings him before this Court. And his status as a victim of the very crime for which he will not receive a significant sentence mitigates the severity of *his* offense. Mr. Myles did not get not involved in drug sales to get rich or gain the lavish benefits that truly blameworthy drug dealers are. He

obtained none of the benefits associated with drug dealing and, instead, suffered the ill effects of being an addict. Thus, his crime is not as serious as that committed by the dealers who sell larger quantities to obtain great wealth for themselves. The sentence sought by the government tis the kind of sentence that would be approriate for the dealers selling massive quantities and obtaining massive wealth. It is not appropriate for an addict who is turns to small scale drug sale to simply further his own habit. That is why a sentence between 120 and 144 months is more appropriate for Mr. Myles than a sentence within the guideline range. A guideline sentence fails to recognize the difference between a low level addict and the large scale dealers that created him. It punishes the addict as severely as the person whose desire for wealth furthers this vicious cycle. A sentence between 120 and 144 months is substantial and recognizes the seriousness of the crime. But it does not raise the culpability of an addict to the equivalent of the culpability of a large scale drug trafficker. A sentence between 120 and 144 months recognizes the difference.

For all of these reasons, Mr. Myles requests that the Court impose a sentence between 120 and 144 months in custody.

Respectfully submitted,

ISAAC MYLES

By:     s/ Beau B. Brindley
        s/ Joshua J. Jones

LAW OFFICES OF BEAU B. BRINDLEY
53 West Jackson Blvd.
Suite 1410
Chicago, Illinois 60604
(312) 765-8878 (Phone)

(312) 276-8040 (Fax)